York. May it please the Court, my name is Stephen Warshawski and I represent the plaintiff appellant in this case. In the 2010 case of Tracy v. Freshwater, this Court recognized, quote, infliction of pepper spray on an arrestee has a variety of incapacitating and painful effects, and as such, its use constitutes a significant degree of force. The issue in this appeal, quite simply, is whether the plaintiff, who the jury found was the victim of unlawful pepper spraying by the defendant, whether he suffered an actual injury from the pepper spray, thereby entitling him to compensatory damages, not nominal damages, as a matter of law. Mr. Warshawski, you took the position in your reply brief, correct me if I'm wrong, but I think it was explicit, that in every instance where an officer uses pepper spray, that nominal damages are essentially unavailable because of this reference in Tracy that it's a serious act by a police officer, that in every instance, then, if a police officer pepper sprays someone, they cannot get nominal damages if it was done in, you know, it was in excessive force. That's your position, right? Warshawski, Well, in every instance, no, that's not our position. In every instance that corresponds with the facts of this case, in which the evidence shows that the police officer at close range sprayed the plaintiff directly in the face. Roberts, you can see that there could be circumstances where nominal damage might be appropriate, even if there was a use of pepper spray that was unlawful. Warshawski, Yes. Roberts, all right. Your position here complicated by two things. One, you've got a jury verdict awarding nominal damages. And number two, as I read the record, and correct me if I'm wrong, your client didn't really testify to any damages. Warshawski, Yes. With respect to both those issues, first of all, the jury verdict issue. Roberts, Didn't testify to any injury or damages, is how I read it. Warshawski, Answering the second question first, at trial, the plaintiff did not specifically testify to the harm caused by the pepper spray. We introduced evidence about that from other eyewitnesses and from his medical records in which he did contemporaneously complain to the hospital about the effects of pepper spray. So there was evidence in the record from a police officer and two other eyewitnesses as to the plaintiff actually experiencing the incapacitating painful effects. The jury could have discredited that based upon the fact that he didn't testify about it at trial, that his mug, the arrest photo showed no signs of injury, and that there was no diagnosis or treatment. And he initially, even though he did later say, my eyes hurt, initially at the precinct told the EMT, I don't need any treatment, I'm not going to the hospital, washed his eyes out himself, and only three hours later decided that he now wanted to go to hospital. So aren't these classic jury issues where they say notwithstanding that he later complained in the hospital where other people, some of whom were his friends, said that he had some pain, the jury could decide that there was other evidence that suggested the pain wasn't enough to warrant any damages? Well, we respectfully disagree with that view. With respect to the mug shot photo, pepper spray does not leave physical injuries. So after the mug shot photo was taken It could make your eyes swollen. It could make your eyes, you know, there could be a lot of physical manifestations. It could make your eyes red. The redness is shown in the medical records. Your eyes could be red for a lot of reasons. He was drinking that night. Your eyes could be red for that reason, too, right? The nature and purpose of pepper spray is to cause an immediate, incapacitating and very painful effect on a person. It is temporary by nature. There's nothing in the Second Circuit case law that suggests temporary infliction of extreme pain is not compensable. In fact, in the Wheatley ---- Senator, you have to satisfy. I mean, it's so, you know, we look at this record and say, is there any way to harmonize the, to understand the jury verdict? And I, it's a very tough standard for you to meet, that there was no way in which the jury could have failed to give compensatory damages here. I think what distinguishes this case, Your Honor, for example, from the Ali V. Kip case, which is another case that you were on, in that case, and in a lot of the ---- I was on Tracy, too, I believe. I'm sorry? I was on Tracy v. Freshwater, too. Yes. Yes, you were. You wrote that decision. In those cases, there's ambiguity as to the excessive force itself. So in Ali v. Kip, the plaintiff said, my injuries were caused by him bashing my head against the cell doors, whereas it was possible to conclude that the jury found the excessive force was the forcible dragging him to the cell. And that's the distinction that is drawn in every one of those cases. Here, we know the specific act of excessive force. It's the use of pepper spray. We know objectively that pepper spray inflicts extreme pain on someone. And we know from the undisputed evidence he experienced that. But there are so many. That's my first question. There's so many variables. When someone uses pepper spray, it depends, did the person cover their eyes? Was their head turned? How much pepper spray was used? There's so many variables that can take place. Was it indoors? Was it outdoors? And you're now suggesting, I think, again, that because it's ---- because of the nature of pepper spray, it must have caused pain. Right? Isn't that ---- Well, but those variables don't apply in this case. The undisputed evidence is that he was sprayed directly in his face. He didn't shield his eyes. There wasn't a gust of wind. So in order for this Court to say the jury is correct in saying nominal damages as opposed to ---- It's undisputed that there wasn't a gust of wind, or the record is simply silent? I'm sorry? It's undisputed that there wasn't a gust of wind at the moment of the pepper spray in this case? Well, there's no evidence to that. There was no evidence put in to ameliorate the effects. Is that what undisputed evidence means on this record, that we ---- that if there's no affirmative evidence of a gust of wind, we must presume that any pepper spray use went directly into the eyes and was not dissipated from the moment it's used to the moment it reaches the eyes by wind? We can't speculate, but we do, in fact, have evidence from the officer when I asked him, and you sprayed him in the face, yes? He said yes. So we do have direct, clear evidence of what happened here. And the issue isn't, do all those factors, including the lack of testimony at trial from the plaintiff, do all those factors weigh into the amount of damages? Of course. But as this Court said in Atkins, if it is clear for ---- Can't all these moving parts just illustrate why questions like this go to jurors? One might have said, you know, he was injured. Someone else might have said it was serious. Someone else might have said it was done. So we give this to jurors. And as I don't have to remind you, as Judge Livingston just pointed out, we are committed to jury verdicts, you know, essentially unless we can say that these were conclusions that no rational jury could reach. And, you know, I can't speak for my colleagues, but I'm not there yet. In this case, Your Honor, the jury did get it wrong. And there's clear precedent in this Court in excessive force cases where the jury comes back with nominal damages. Again, we're not talking about a small amount of damages. How do we know they got it wrong? I'm sorry? How do we know they got it wrong? How do we? You said the jury got it wrong. How do we know that? Well, the jury got it wrong. How do we know that's correct? Because we had undisputed or uncontroverted evidence of the use, direct use of pepper spray with the victim experiencing all the classic symptoms of pepper spray, and the jury concluded, nevertheless, nominal damages, not a small amount of damages. I think that's the distinction. I mean, that's one of the features of a jury system. You can argue that, you know, there are better ways of approaching this problem, but we see jury verdicts all the time that seem to us to reflect, you know, some sort of compromise. But nominal damages is a special situation. And this Court and other courts routinely will say a jury cannot simply ignore the objective facts on the ground and give nominal damages. Why couldn't a jury also conclude rationally, given that your client testified about his other injuries? I had severe striking pains to my back, my lower vertebrae, pain in my shoulders, bumps on my head. I couldn't sit or stand because of the pain. That because of all these other things that he was testifying about, which they find were the result of justified force, that whatever additional pain or discomfort he had in his eyes for a short, temporary period of time wasn't worth any money. Isn't that a rational conclusion as well, given all the other things that he claims that he was suffering from? I don't think so, Your Honor. I think the direct use of pepper spray in a victim's face, when that's the act of excessive force, is it should be entitled to some monetary compensation. Thank you. Good morning, Your Honors. May it please the Court. Ashley Garmon on behalf of Defendants at Pelez. The district court acted well within its discretion here in denying Mr. Gerbez-Pierce's motion for a new damages trial, because a reasonable view of the evidence put before the jury in this case, at this trial, supported a finding that even if the use of pepper spray was unreasonable, Mr. Gerbez-Pierce did not prove any compensable injury resulting from it. And that's what matters here, is the evidence that was actually presented to the jury, not what some hypothetical plaintiff who was unlawfully pepper sprayed might be able to present to a jury, and not what Mr. Pierce claims that he could have presented if he's awarded an opportunity to do a do-over of his trial. And the question is also not whether there was some evidence of an injury from which a jury could have reasonably reached the opposite conclusion, that there were compensatory damages. In this case, the jury could have reasonably concluded that only nominal damages were required for two general reasons. They could have concluded that there was simply no injury at all, and that, as Your Honors have pointed out, because there was other force used, undisputedly lawful force used, and because of the nature of this incident, it took place at 4 o'clock in the morning. Mr. Gerbez-Pierce had admittedly been drinking. He was admittedly screaming and crying. There are a number of other possible reasons why his symptoms that were in the medical records, the red I would also note that Mr. Gerbez-Pierce's credibility was severely questioned at trial, especially with respect to his alleged damages for his other injuries. For example, he testified on direct examination that because of the beating he claims that he suffered at the hands of the officers, he couldn't leave his house for three weeks, and that there was a photo of him concededly at a work event a week later. So certainly the argument that to the record reflects that he complained about the pepper spray to doctors, but that the jury might not have credited the extent of his suffering? Yes, Your Honor, because the only there is very minimal objective evidence of anything related to his eyes. It's really just the medical records indicate he had red eyes. That's really it. And so everything else would be his subjective reports to the hospital staff. And there the jury could have discredited his subjective reports. Similarly, the jury could have rejected the non-party witnesses' testimony. Clearly, the non-party witnesses don't have personal knowledge of what pain Mr. Gerbez-Pierce was actually experiencing. Also, none of those witnesses actually saw the pepper spray being deployed to Mr. Gerbez-Pierce. Secondly, in the second avenue, even if the jury did believe that Mr. Gerbez-Pierce suffered some symptoms or some temporary pain or discomfort from the pepper spray, they could have determined that it was de minimis and therefore not compensable. As Mr. Gerbez-Pierce concedes in his reply brief, de minimis injuries are not do not require compensatory damages. And here, again, given Mr. Pierce's failure to testify to the jury on direct examination when asked about the pain that he experienced as a result of the incident, his failure to mention at all any injuries related to the pepper spray is very compelling evidence that, at least to him, those injuries were not particularly significant if they existed at all. I would just like to briefly discuss the terminology in the reply brief and was used by my adversary today about the fact that it's undisputed that pepper spray was sprayed within close range and directly at Mr. Gerbez-Pierce. That is not what the testimony was. In fact, there was very little testimony about the actual mechanism of the pepper spray being deployed here. Four out of the six witnesses whose testimony was offered at trial did not see that occurring. The only testimony that there was presented about the officer spraying the pepper spray was from the officer and from Mr. Gerbez-Pierce. And Mr. Gerbez-Pierce simply said, I was pepper sprayed. That was it. He did. I looked at the testimony, and he did. The officer said, I sprayed him in the face. The officer said he sprayed him in the face and did not say at what, you know, there's no evidence as to what distance the pepper spray was deployed at, whether it was a direct shot. And as Your Honor pointed out, those factors really make a big difference. And merely because the record was silent about all of those factors and whether or not there was wind, that doesn't mean that it's undisputed that there was no wind. And so the matter of the wind, there was some testimony that they were struggling on the ground that, you know, there's a lot of variables besides the wind, right? The angle, you know, whether there's a struggle going on at the same time, whether the head was turned, there's a lot of variables. Correct. And the way to know how long the, you know, how long the pepper spray was sprayed. Correct, Your Honor. And I think it's also, I mean, here we uniquely know what the jury was thinking because the special interrogatory that they answered was a fill-in-the-blank. So they specifically wrote the excessive force that they found was the spraying of Mr. Gerbez-Pierce while he was already confined. And so it's entirely possible, you know, they didn't say because he was sprayed at close range or for a very long period of time or too many bursts of pepper spray, it clearly, the issue for the jury was the fact that it was simply unnecessary. But they concluded, and reasonably so, that Mr. Gerbez-Pierce didn't prove his compensatory damages, and so they quite properly awarded nominal damages. And unless, Your Honors, have any more questions, we simply ask that the Court affirm for the reasons that we stated in our brief. Based on the evidence presented at trial, the evidence from the police officers, as well as the eyewitnesses, Mr. Pierce was sprayed in the face with pepper spray. And we know from the witnesses at trial that he experienced all the telltale symptoms of pepper spray. So the idea that he didn't suffer any injury is preposterous. The fact that Mr. Pierce didn't testify to that point certainly goes to the amount of damages that he should be entitled to. But the question is one of actual injury. He testified on a number of issues, a number of topics. But tellingly, he didn't testify about his injuries. Why should we speculate that he had them if he let pass the easy opportunity to just describe to the jury what happened to him as a consequence of being pepper sprayed? There's all the other evidence in the record that shows that the incident happened and that he suffered from it. The fact that he didn't testify to it, first of all, doesn't bar him. There's no principled evidence that says he's the only dispositive witness. It goes to the amount of his damages. I should not agree with you more on that, but if I'm sitting up in a jury and third parties are testifying about what somebody else felt and somebody else is silent when asked about that particular series of facts, I might be skeptical. Well, but it wasn't just what he felt. They were testifying to the actual physically observable effects of the pepper spray, which the officers themselves testified, that's what happens when you're pepper sprayed. So we have the act of the pepper spray and the corroboration that he experienced. Why would he initially decline any treatment from the EMTs and decline to go to the hospital if he was in pain? I don't know the answer to that question. I think initially he was very upset that he had been arrested and he was being oppositional to what was happening to him that night. Couldn't a jury rely on that fact to undermine whatever other people thought he might have been experiencing, the fact that he himself declined any treatment? But that goes, again, that goes to the amount of damage. That doesn't go to the fact that he suffered the initial encounter. After all, pepper spray, again, is temporary in its effects. And so after you've cried and you wipe it off your face and so on, it's going to tend to go away. So the question is not, is this a million-dollar case? But the question isn't, is it a one-dollar case? Even pepper spray in the face, if we don't know anything about how far away the officer was from the person pepper sprayed, we don't know anything about how long the pepper spray was sprayed, how many bursts, we don't know anything about if a scuffle may have resulted even with facial use, pepper spray aimed at the face, whether it actually reached the face. And so I think there's a little in the jury's determination here that given the fact that he didn't testify, that he didn't tell us that the pepper spray was important to him, we heard no testimony about it from him, that they're just, you know, yes, they shouldn't have used the pepper spray, but there was not significant enough effect for it to be a compensable injury. Well, I think, first of all, there really wasn't that uncertainty. They were scuffling, so they were obviously next to each other. Mr. Pierce was on the ground. According to the officer, Mr. Pierce was trying to get up, and as he was trying to get up, that's when he sprayed him in the face. So it's obviously relatively close range. I think what happened here, Your Honor, is that Mr. Pierce was effectively impeached on other parts of his damages testimony, and the jury probably held that against him when they were assessing the issue of the pepper spray. But that's improper, because a nominal damages award is saying that you can get sprayed in the face with pepper spray, and it's simply not compensable. It's a trivial injury. I don't think that that's correct, and I think that the idea that he didn't suffer enough of an actual injury, temporary albeit, to trigger compensable damages under the case law. Thank you. Thank you both. Yes, we'll take it under advisement. That is the last case to be argued on the calendar today, so I'll ask the clerk to adjourn. We're done. We're doing the oboe bump. Take care. Thank you.